Timothy C. Travelstead, Esq. (SBN 215260)
  *t.travelstead@narayantravelstead.com*
Scott C. Ku, Esq. (SBN 314970)
  *s.ku@narayantravelstead.com*
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Drive, Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for Defendant
ALAMEDA HEALTH SYSTEM

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEFRETIRI ABAT,<br><br>       Pro Se Plaintiff,<br><br>Vs.<br><br>ALAMEDA HEALTH SYSTEM,<br><br>       Defendant. | Case No. 4:24-cv-01739<br><br><br>**DEFENDANT ALAMEDA HEALTH SYSTEM'S NOTICE OF REMOVAL OF CIVIL ACTION**<br><br><br><br><br>State Court Case No.: 23CV050844, filed on 11/13/2023, no trial date |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF**

**NEFRETIRI ABAT, PRO SE PLAINTFF ("PLAINTIFF"):**

**PLEASE TAKE NOTICE** that defendant Alameda Health System ("Defendant" or "AHS") files this Notice of Removal.  The above-entitled case is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. This civil action is one that may be properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

1

**DEFENDANT ALAMEDA HEALTH SYSTEM'S NOTICE OF REMOVAL OF CIVIL ACTION**

In compliance with 28 U.S.C. § 1446(a), Defendant asserts the following grounds for removal:

1.      On or about November 13, 2023, Plaintiff commenced the aforementioned action against Defendant by filing a Complaint in the Superior Court of the State of California, County of Alameda, entitled *Nefretiri Abat v. Alameda Health System*, Case No. 23CV050844 (hereinafter the "State Court Action").  Plaintiff and Defendant are the only parties.

2.      True and correct copies of Plaintiff's Summons and Complaint, and associated paperwork, are attached hereto as **Exhibit 1**.

3.      Defendant received the Summons and Complaint on February 22, 2024 and did not receive the Complaint or the Summons before that date.  Plaintiff did not serve a copy of the Proof of Service with the papers.

4.      Defendant has not filed or received any process, pleadings or papers in the State Court Action other than those attached hereto as Exhibit 1. Exhibit 1 constitutes all of the State Court Action process, pleadings and papers to date.

5.      This Notice of Removal is timely; Defendant is filing it within thirty (30) days after the receipt by Defendant of the Summons and Complaint, pursuant to 28 U.S.C. § 1446(b).

6.      Pursuant to 28 U.S.C. § 1446(d), Defendant will serve prompt written notice of this Notice of Removal on Plaintiff, and Defendant will file this Notice of Removal with the Clerk of the Superior Court of the State of California, County of Alameda.

<u>**Removal Based on Federal Question and Civil Rights**</u>

7.      This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1343 and 1441 because it involves claims or rights arising under the laws of the United States and Civil Rights. The Complaint alleges six claims. The first claim for relief is for sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII").[1] and the Fair Employment and Housing Act, Cal. Gov't Code §§ 12900 *et seq*.[2]; the second claim is for Retaliation pursuant to Title VII and FEHA; the third claim is for Wrongful Termination

---

[1] Plaintiff is does not specifically cite "42 U.S.C. § 2000e, *et seq*. and instead references "Title VII of the Civil Rights Act of 1964."

[2] Plaintiff does not specifically cite to "Cal. Gov't Code §§ 12900 *et seq*." and instead references "FEHA."

pursuant to Title VII and FEHA; the fourth claim is for Violation of Mandatory Reporting Protections Towards Plaintiff and the basis for this claim is unclear; the fifth claim is for Hostile Work Environment, pursuant to Title VII and FEHA; and the sixth claim is for Negligent Supervision of Upper Management Resulted in Perpetuation of Hostile Work Environment and the basis for this claim is unclear. The gravamen of the Complaint is alleged violations of Title VII and FEHA. The first, second, third and fifth claims cite to both Title VII and FEHA.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over state claims in the Complaint. Plaintiff's state claims are based on the same core allegations as the four claims alleging Title VII violations. Therefore, Plaintiff's state claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

### Venue

9. Venue lies in the United States District Court for the Northern District of California (the "Northern District"), pursuant to 28 U.S.C. §§ 84(a) and 1441(a) because this Court's territorial jurisdiction includes Alameda County, California, where the State Court Action was filed and is pending. Venue is proper under 28 U.S.C. § 1391 because all of the conduct complained of occurred within the Northern District and all parties reside in it.

For all of the foregoing reasons, the State Court Action is removable to this Court.

WHEREFORE, Defendant prays that the State Court Action be removed from the Superior Court of California, Alameda County, to this Court.

Dated: March 20, 2024                    NARAYAN TRAVELSTEAD P.C.

/s/ Timothy C. Travelstead
Timothy C. Travelstead
Scott C. Ku
Attorneys for Defendant
Alameda Health System

3
**DEFENDANT ALAMEDA HEALTH SYSTEM'S NOTICE OF REMOVAL OF CIVIL ACTION**

# EXHIBIT 1

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA**<br><br>COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612<br><br>PLAINTIFF:<br>Nefretiri Abat<br><br>DEFENDANT:<br>Alameda Health System | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>11/13/2023<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>D. Franklin |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>23CV050844 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| | |
|---|---|
| Date: 04/02/2024   Time: 3:00 PM   Dept.: 19 | |
| Location: Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>11/13/2023<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>D. Franklin |
| PLAINTIFF/PETITIONER:<br>Nefretiri Abat | |
| DEFENDANT/RESPONDENT:<br>Alameda Health System | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23CV050844 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Nefretiri Abat
3355 Richmond Blvd
Oakland, CA 94611

Chad Finke, Executive Officer / Clerk of the Court

Dated: 11/14/2023                    By:

D. Franklin, Deputy Clerk

**CERTIFICATE OF MAILING**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Nefretiri Abat

| | |
|---|---|
| TELEPHONE NO.: (650)440-0599 | FAX NO. *(Optional):* |
| E-MAIL ADDRESS: nefabat@gmail.com | |
| ATTORNEY FOR *(Name)*: Nefretiri Abat (pro se filing) | |

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
11/13/2023 at 12:00:00 AM
By: Damaree Franklin,
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS:
MAILING ADDRESS: 24405 Amador St.
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME:
Nefretiri Abat vs Alameda Health System

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 23CV050844 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[x] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: 5
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 12, 2023

Nefretiri Abat
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 |



**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET** CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. September 1, 2021]     **CIVIL CASE COVER SHEET**     Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form | Clear this form

 CamScanner

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br><br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>11/13/2023<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>D. Franklin |
| PLAINTIFF(S):<br>Nefretiri Abat | |
| DEFENDANT(S):<br>Alameda Health System | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>23CV050844 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| ASSIGNED JUDGE: | Stephen Kaus |
| DEPARTMENT: | 19 |
| LOCATION: | Rene C. Davidson Courthouse |
| | Administration Building, 1221 Oak Street, Oakland, CA 94612 |
| PHONE NUMBER: | (510) 267-6935 |
| FAX NUMBER: | |
| EMAIL ADDRESS: | Dept.19@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**NOTICE OF CASE ASSIGNMENT**

**ASSIGNED FOR ALL PURPOSES TO**

**JUDGE** Stephen Kaus

**DEPARTMENT** 19

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days." The court's website contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

D. Franklin, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
11/13/2023
Chad Finke, Executive Officer / Clerk of the Court
By: _____ D. Franklin _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Alameda Health System

RECEIVED
Clerk of the Board

FEB 22 2024

Alameda Health System
Board of Trustees

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Nefretiri Abat

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Hayward Hall of Justice 24405 Amador St. Hayward, CA 94544

CASE NUMBER:
*(Número del Caso):*
**23CV050844**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nefretiri Abat

DATE: November 12, 2023
*(Fecha)* 11/13/2023

Chad Finke, Executive Officer / Clerk of the Court
Clerk, by _____ D. Franklin _____ , Deputy
*(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Michael Gomez as agent of Alameda Health System

   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form] [Save this form]    [Clear this form]



ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
11/13/2023 at 12:00:00 AM
By: Damaree Franklin,
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

NEFRETIRI ABAT,

     Pro Se Plaintiff,

Vs.

ALAMEDA HEALTH SYSTEM,

     Defendant

Case No.: 23CV050844

COMPLAINT FOR:
(1) Sexual Harassment;
(2) Retaliation;
(3) Wrongful Termination;
(4) Hostile Work Environment;
(5) Negligent Supervision

## I. INTRODUCTION

Ms. Nefretiri Abat, formerly associated with the Alameda Health System (hereafter "AHS"), hereby lodges this complaint to formally register and chronicle a sequence of reprisal measures, climaxing in her unwarranted dismissal from her role on March 23, 2023. Such measures are retaliatory by nature, precipitated by Ms. Abat's participation in activities shielded by federal mandate:

1   Disclosure of occurrences indicative of harassment and patient maltreatment within the institution's bounds.

2   Invocation of her entitlement to medical respite for imperative surgical intervention.

The retaliatory conduct is in stark contravention of federal directives and the statutes of the State of California, which unambiguously protect employees from punitive responses for activities such as whistleblowing, reporting malfeasance, and utilizing legally sanctioned medical leave.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 1

## II. IDENTIFICATION OF PARTIES

Complainant:

**Ms. Nefretiri Abat** - Past employee of AHS, serving within Inpatient Unit C at John George Psychiatric Hospital.

Alleged Retaliators:

Ms. Jacqueline Hampton - Incumbent Nurse Manager at AHS and immediate superior to Ms. Abat.

Pertinent Individuals:

Justin: Implicated in acts of sexual harassment; employee of AHS.

Amir: Employed by AHS; implicated in acts of sexual harassment.

Jeremiah: Patient and a sufferer of adult maltreatment.

Nicholas: Patient and a victim of adult mistreatment.

Christopher Pletcher: Patient reported to have experienced abuse.

Shaden: Registered Nurse and witness to the alleged mistreatment of Christopher Pletchet; collaborator with Ms. Abat in reporting the incident.

Ashley: Weekdays House Supervisor at John George Pavilion, AHS.

Michael Olise: Weekend House Supervisor John George Pavilion, AHS.

Dahlia: Inpatient C Charge Nurse with direct supervisory duties over Ms. Abat; provider of unsought yet commendatory appraisals of Ms. Abat's professional dedication, shortly preceding her discharge.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 2

Syeereta Corbitt: Senior Manager of Clinical Quality Improvement and Risk Management at AHS.

Rodney Delaney: Director of Nursing at JGPH.

Theresa Cooper: High-ranking official in-Patient Care Services.

Defendant Organization:

**Alameda Health System (AHS)**

# III. STATEMENT OF FACTS

**Hiring and Role:**

Ms. Nefretiri Abat was hired by Alameda Health System (AHS) on August 15, 2022, and was assigned to Inpatient Unit C at John George Psychiatric Hospital under the hiring manager, Jacqueline Hampton. No exhibits are attached to this fact as it is an introductory statement.

Initial Incidents of Harassment:

**First Case of Sexual Harassment by Offender Justin:**

On August 29, 2022, Ms. Abat experienced the first instance of sexual harassment at the hands of Justin, an AHS employee with eight years of service. Documented in **Exhibit A** are screenshots of unanswered calls and a text message from Justin on the same date, demonstrating his attempts to reach Ms. Abat during their shared shift. After her lack of response, Justin confronted Ms. Abat in person, addressing her as "Babe" — a term she immediately contested as inappropriate and indicative of sexual harassment. When she confronted him about this behavior, he casually dismissed her concern.

**Second Case of Sexual Harassment by Amir :**

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 3

Ms. Abat faced further incidents of harassment by Justin and another AHS employee, Amir. She reported this harassment, but the behavior continued unabated. Detailed in **Exhibit B** is a screenshot from a Zoom meeting conducted on March 2nd by Alameda Health System as part of an investigation into the alleged sexual harassment incidents involving Ms. Abat and Justin. This exhibit demonstrates the organization's acknowledgement of the harassment complaint. **Exhibit C** comprises a screenshot from the same Zoom investigation meeting held on March 2nd by Alameda Health System's legal investigator, addressing the sexual harassment allegations concerning Ms. Abat and an individual named Amir. The screenshot captures a moment during the meeting where Ms. Abat confirms an incident caught on video footage.

**Witnessing Two Incidents of Patient Abuse:**

On November 6, 2022, Ms. Abat witnessed two separate incidents involving the severe manhandling of patients in the Facility. The first incident concerned a patient named Jeremiah, and the second involved a patient named Nicholas. These incidents were reported to Ms. Jacqueline Hampton verbally and via email the next day. Referenced in **Exhibit D** is the email thread highlighting Ms. Abat's second attempt to escalate concerns about patient safety, including the initial email sent on November 7th and the follow-up email sent on November 11th due to the lack of response from Ms. Hampton. This exhibit underlines the reported abuse and the subsequent inaction by the managerial staff responsible.

**Reporting of Sexual Harassment and Two Incidents of Patient Abuse:**

On November 7th, following the witnessed incidents of patient mistreatment and personal harassment, Ms. Abat reported in writing via email the sexual harassment and the two incidents of adult abuse against patients Jeremiah and Nicholas to the weekend night house supervisor on duty, Michael Olise. **Exhibit E** presents the detailed correspondence from Ms. Abat to Michael

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 4

Olise, documenting her experience of sexual harassment and reporting the abuse against patients. This email served as a formal written report calling for immediate investigation and intervention. Mr. Olise assured Ms. Abat that he had reported the incidents to Ms. Jacqueline Hampton on the same day.

**Inadequate Management Response:**

Despite formal complaints and reporting, no effective action was taken. The continued lack of an appropriate response forced Ms. Abat to escalate the matter further by reaching out to Risk Management. **Exhibit F** contains an email from Ms. Abat to the Risk Manager, Syreeta Corbitt, dated November 16th, which expresses Ms. Abat's concerns regarding the unresolved issues and requests for a proper investigation and management of the incidents.

**Medical Leave:**

Due to a pressing medical condition, Ms. Abat underwent urgent surgery. She kept her employer informed of her health status and obtained approval for a six-week medical leave beginning on November 30, 2022, from Ms. Jacqueline Hampton. Unfortunately, Ms. Abat suffered severe complications during the procedure, which necessitated life-saving emergency intervention and extended hospitalization, including a two-day intensive post-operative care in the Intensive Care Unit. **Exhibit G** is the email from Ms. Abat to the staffing office, which outlines her critical health situation post-surgery and the subsequent extension of her inability to return to work due to the need for recovery from a near-fatal experience.

**Reporting A Third Incident of Patient/Adult Abuse:**

In March 2023, Ms. Abat, along with Shaden, a fellow Registered Nurse (RN), reported another incident of patient/elder abuse involving a patient named Christopher Pletcher. Although Ms. Abat did not personally witness the abuse, she supported her colleague in reporting the

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 5

incident to Ashley, the Weekday Housing Supervisor on duty. Unfortunately, the report was dismissed by Ashley, and Ms. Abat did not pursue the matter further due to not being a direct witness.

**Professional Recognition and Commendation:**

On March 22, 2023, at 10:10 PM, Ms. Abat received unsolicited professional recognition from Ms. Dahlia, the charge nurse overseeing her work. Ms. Dahlia's text message praised Ms. Abat's passion and caring nature towards patients, highlighting her exceptional dedication and exemplary service. **Exhibit H** is a screenshot of this text message, serving as evidence of the high regard in which Ms. Abat is held by her peers.

**Termination of Employment:**

The following day, Saturday, on March 23, 2023, Ms. Abat was issued a termination letter by Ms. Hampton, with Ms. Ashley present on her day off. The letter stated "unsatisfactory performance" as the reason for her dismissal, a claim that contradicts the positive evaluations and the recent commendation received by Ms. Abat. **Exhibit I is** the termination letter handed to Ms. Abat, which contrasts sharply with the documented commendations, suggesting an inconsistency between the alleged reason for termination and Ms. Abat's documented job performance.

**Petitions Against Ms. Hampton**

Within the same year as Ms. Abat's termination, in a distressing reflection of Ms. Hampton's management, an astonishing number of Alameda Health System employees, 39 in total across various departments, came together to file petitions calling for Ms. Hampton's dismissal. These petitions detailed numerous accounts of harassment, antagonistic management practices, and unprofessional conduct attributable to Ms. Hampton's tenure.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 6

Alameda Health System's upper management was duly notified of these grievances on two distinct occasions but regrettably, they failed to take corrective measures, implicitly condoning Ms. Hampton's leadership approach. This inaction is indicative of an institutional neglect, reinforcing the notion that Ms. Abat's adverse experiences were symptomatic of a wider, pernicious culture within the organization—a culture that Alameda Health System neglected to rectify.

Moreover, the lack of response to these petitions implicates Alameda Health System in a charge of negligent oversight and substantiates their accountability for perpetuating a hostile work atmosphere.

**Exhibit J** is a palpable representation of the collective outcry against Ms. Hampton, capturing the signatures of 39 employees. The document titled "Remove Jacqueline Hampton from Leadership," addressed to Mr. Rodney Delaney, Director of Nursing at JGPH, and Theresa Cooper, VIP of Patient Care Services, substantiates the widespread discontent with Ms. Hampton's leadership and adds credence to Ms. Abat's allegations of reprisal and defamation.

Given the extent of the opposition to Ms. Hampton documented in the same year as Ms. Abat's discharge, the reasons cited for Ms. Abat's dismissal not only come into question but also seem indicative of a retaliatory motive, particularly since these petitions directly challenge the conduct of the individual responsible for her termination.

## IV. Causes of Action

### First Cause of Action - Sexual Harassment Under
### Title VII of the Civil Rights Act of 1964 and FEHA

The plaintiff asserts a cause of action for sexual harassment under Title VII of the Civil Rights Act of 1964 (Title VII) and the Fair Employment and Housing Act (FEHA) against the

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 7

defendant. The plaintiff contends that the defendant's actions and behavior constituted unlawful sexual harassment in violation of federal and state anti-discrimination laws.

In this cause of action, the plaintiff will demonstrate the following:

i) The plaintiff is an employee or was subjected to an employment relationship with the defendant, thus invoking the protections of Title VII and FEHA.

ii) The defendant engaged in unwelcome and offensive sexual conduct, advances, comments, or actions directed toward the plaintiff.

iii) The plaintiff experienced severe or pervasive harassment based on their sex or gender.

iv) The defendant's conduct created a hostile work environment that interfered with the plaintiff's employment conditions.

v) The plaintiff notified the defendant's management or appropriate authorities of the harassment, or the harassment was so severe and pervasive that notice can be inferred.

vi) The defendant failed to take prompt and effective remedial action to address and rectify the harassment, thereby contributing to a hostile work environment.

The plaintiff alleges that the defendant's inactions make them liable for the unlawful sexual harassment by their employees, entitling the plaintiff to remedies available under both federal and state law, including compensatory and punitive damages, injunctive relief, and attorney's fees, as provided by Title VII and FEHA.

Ms. Abat's experience of multiple incidents of sexual harassment by two employees aligns significantly with the legal precedent set by the case of Meritor Savings Bank v. Vinson 477 u.s. 57 (1986). This landmark case, decided by the United States Supreme Court, established a critical precedent for addressing claims of sexual harassment in the workplace. In Meritor Savings Bank v. Vinson, the Court recognized that sexual harassment could create a hostile work

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 8

environment that violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination based on sex.

The key takeaway from the Meritor case is that employers can be held liable for sexual harassment by their employees if they are aware of the harassment and fail to take prompt and appropriate corrective action. This ruling emphasizes the responsibility of employers to ensure a safe and harassment-free workplace for their employees.

Furthermore, Ms. Abat's case benefits from the broader protections afforded by the Fair Employment and Housing Act (FEHA). FEHA is a California state law that extends protections against workplace harassment and discrimination. Importantly, FEHA's scope is expansive, covering a wide range of protected categories, including sex and gender, and it applies not only during permanent employment but also during probation. This means Ms. Abat is still protected under FEHA even after her employment ends.

The alignment of Ms. Abat's experience with the Meritor Savings Bank v. Vinson 477 u.s. 57 (1986) case underscores the seriousness of the hostile work environment she endured due to sexual harassment. Additionally, FEHA's comprehensive coverage solidifies her position, ensuring that she is also protected under the law even though she is still on probation. These legal foundations provide a strong basis for her harassment claim and the pursuit of remedies for the harm she has suffered.

As a result of the defendant's actions, the plaintiff suffered emotional distress, loss of work opportunities, and other damages, for which they seek appropriate relief under Title VII and FEHA.

**Second Cause of Action – Retaliation Under Title VII of the Civil**

**Rights Act of 1964 and FEHA:**

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 9

The plaintiff asserts a second cause of action for retaliation under Title VII of the Civil Rights Act of 1964 (Title VII) and the Fair Employment and Housing Act (FEHA) against the defendant. The plaintiff contends that the defendant engaged in unlawful retaliation in response to the plaintiff's protected activities, which include but are not limited to reporting and opposing sexual harassment.

In this cause of action, the plaintiff will demonstrate the following:

i) The plaintiff engaged in protected activities under Title VII and FEHA, including reporting incidents of sexual harassment or opposing unlawful employment practices.

ii) The defendant, in response to the plaintiff's protected activities, subjected the plaintiff to adverse employment actions, including but not limited to termination, demotion, or other adverse treatment.

iii) The adverse employment actions taken by the defendant were a direct result of the plaintiff's protected activities.

iv) The plaintiff suffered harm, including emotional distress, loss of employment opportunities, and other damages, as a result of the defendant's retaliatory actions.

The plaintiff alleges that the defendant's retaliatory conduct violated federal and state anti-discrimination laws, including Title VII and FEHA, which prohibit retaliation against employees for engaging in protected activities.

**Shifting the Burden of Proof to the Employer: The Lawson Case and Labor Code Section 1102.6 Standard**

The plaintiff, Ms. Abat, relies on the precedent set by the Lawson case to establish the appropriate standard for evaluating her whistleblower retaliation claim under California Labor Code section 1102.5. In Lawson v. PPG Architectural Finishes, Inc., 12 Cal.5th 703, the

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 10

plaintiff, Lawson, brought a whistleblower retaliation claim under California Labor Code section 1102.5, alleging that his employer, PPG, retaliated against him for complaining about purported fraudulent practices by his supervisor.

The district court initially granted summary judgment for PPG using the McDonnell Douglas standard. However, on appeal, Lawson argued that the district court should have applied the Labor Code section 1102.6 standard instead. The Ninth Circuit eventually certified the case to the Supreme Court of California to decide which standard applies to California whistleblower retaliation claims.

The Labor Code section 1102.6 standard, as established by the Supreme Court of California, is as follows:

i) The employee has the burden to show by preponderance of the evidence that the employee's protected activity was a contributing factor to the employer's adverse employment action.

ii) If the employee meets that burden, the burden shifts to the employer to show by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons, even if the employee had not engaged in protected activity (Cal. Labor Code § 1102.6).

This standard is significant in the context of Ms. Abat's case as it places the burden on her employer, Alameda Health System, to demonstrate by clear and convincing evidence that they would have taken the same adverse employment action against her, even if she had not engaged in protected activity. This standard reinforces the need for a thorough examination of the circumstances surrounding Ms. Abat's termination and any potential retaliatory motives.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 11

By applying the Labor Code section 1102.6 standard, this Court can ensure that Ms. Abat's whistleblower retaliation claim is assessed in accordance with California law, further strengthening her case.

**Zero Tolerance for Retaliation: Cases Highlighting the Protection of Employees**

In Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, a significant California case, the plaintiff, Yanowitz, worked for L'Oreal USA. She refused to participate in what she believed to be discriminatory hiring practices and reported them to her superiors. Subsequently, she faced negative consequences at work, including being excluded from meetings and denied promotions. The California Supreme Court ruled in Yanowitz's favor, emphasizing that employees should not face retaliation for opposing discriminatory practices within their workplace. This case serves as an important precedent highlighting the protection of employees who speak out against discrimination.

In the case of EEOC v. New Breed Logistics (2011), the U.S. Equal Employment Opportunity Commission (EEOC) sued New Breed Logistics over allegations of violating anti-retaliation laws due to their zero tolerance policy for workplace injuries, which resulted in adverse actions against employees who reported injuries. The case was settled.

In Donelson v. DuPont Chambers Works (2013), Victoria Donelson reported safety and environmental concerns at her workplace, DuPont Chambers Works. She claimed to have faced retaliation in the form of reassignment and harassment. The Third Circuit Court of Appeals ruled in favor of Victoria Donelson, emphasizing that her reports of safety violations were protected activities, and her employer's retaliatory actions were unlawful.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 12

**Title VII and "Cat's Paw" Theory:**

The legal concept of "res ipsa loquitur," which translates to "the thing speaks for itself," is highly relevant in understanding the circumstances surrounding Ms. Abat's termination in conjunction with the temporal proximity under the "Cat's Paw" theory, as supported by the precedent set in Burlington Northern & Santa Fe Railway Co. v. White 548 u.s. 53 (2006).

"Res ipsa loquitur" is a doctrine used in legal proceedings when an incident or event speaks for itself and implies negligence or wrongdoing. In the context of Ms. Abat's case, the principle of temporal proximity implies that the timing of her termination shortly after her reporting of harassment and abuse speaks for itself as potentially retaliatory in nature. This temporal proximity between the protected activity (reporting harassment and abuse) and the adverse employment action (termination) creates a strong inference that the two events are connected.

The "Cat's Paw" theory, as established in Burlington Northern & Santa Fe Railway Co. v. White 548 u.s. 53 (2006), recognizes that an adverse employment action can be attributed to a biased subordinate, even if the ultimate decision-maker appears impartial. In Ms. Abat's case, if her reports of harassment and abuse were brought to the attention of a supervisor or manager who harbored bias or retaliatory motives, their influence on the decision to terminate her employment could be significant.

Therefore, when we consider "res ipsa loquitur" in conjunction with the "Cat's Paw" theory, the temporal proximity between Ms. Abat's protected reporting and her subsequent termination strongly suggests that the adverse action may have been influenced by retaliatory motives. This legal perspective underscores the need for a thorough investigation into the

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 13

circumstances surrounding her termination to determine if her protected rights under the law were indeed violated.

As a result of the defendant's unlawful retaliation, the plaintiff seeks remedies available under Title VII and FEHA, including but not limited to compensatory and punitive damages, reinstatement, injunctive relief, attorney's fees, and any other appropriate relief as determined by the court.

### Third Cause of Action - Wrongful Termination Under

### Title VII of the Civil Rights Act of 1964 and FEHA:

The plaintiff asserts a third cause of action for wrongful termination under Title VII of the Civil Rights Act of 1964 (Title VII) and the Fair Employment and Housing Act (FEHA) against the defendant. The plaintiff contends that the defendant's termination of their employment was in violation of federal and state anti-discrimination laws.

In this cause of action, the plaintiff will demonstrate the following:

i)  The plaintiff was an employee of the defendant and thus entitled to the protections afforded by Title VII and FEHA.

ii)  The defendant terminated the plaintiff's employment in a manner that violated federal and state anti-discrimination laws, including Title VII and FEHA.

iii) The termination was based on discriminatory factors, such as the plaintiff's sex or gender, and was not justified by legitimate business reasons.

iv) As a result of the wrongful termination, the plaintiff suffered damages, including loss of wages, benefits, and emotional distress.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 14

The plaintiff alleges that the defendant's termination of their employment constitutes wrongful termination under Title VII and FEHA, which prohibit discriminatory termination practices.

**Pretext and Breach of Contract:**

In the matter of Ms. Abat's employment termination and potential breach of contract, it is imperative to assert that Foley v. Interactive Data Corp. 47 Cal. 3d 654 (1988) stands as a relevant legal precedent that can be invoked to challenge the pretextual basis for her dismissal, namely, "unsatisfactory performance." This assertion is reinforced by the substantial body of evidence, notably the positive evaluation and professional commendation Ms. Abat received during her tenure. These accolades fundamentally undermine the veracity of the employer's asserted grounds for termination, thereby casting doubt on their legitimacy and raising concerns of pretext. Ms. Dahlia, the charge nurse working with Ms. Abat at night, sent her a text message and praised her for her passion and caring nature towards patients, highlighting her exceptional dedication and exemplary service. The text message read, "I can see that you are too good for JG Nef to tell you the truth. I feel sorry that we are not as passionate and deeply caring & loving toward the pts. (patients). I know you love the pts @ JG." Ms. Abat truly cared for the patients, as she reported three cases of adult abuse during her very short tenure there, even risking her job to ensure that the patients were not abused and that she fulfilled her legal duty towards them.

Therefore, it is incumbent upon this complaint to underscore that the invocation of Foley v. Interactive Data Corp. 47 Cal. 3d 654 (1988) represents a strategic legal approach to establish that the termination may indeed be pretextual and constitutes a breach of contract, as it appears to hinge on purportedly false or deceptive grounds, "unsatisfactory performance," consequently necessitating legal redress and remedies in favor of Ms. Abat. **Consequent Financial Damages:**

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 15

Over three and a half months, from August 15th to November 30th, 2022, Ms. Abat earned a total compensation of $89,678, which included her salary, bonuses, and any other benefits associated with her position. Exhibit J shows the W2 for 2022. As a direct result of the termination, Ms. Abat suffered substantial financial damage as a result of the above wrongful termination and retaliation. These damages can be attributed to the loss of her primary source of income, which was her employment with AHS. Ms. Abat relied on her earnings to meet her financial obligations, including rent or mortgage payments, utility bills, medical expenses, and other day-to-day living expenses. The abrupt loss of income created significant financial hardship and emotional distress for Ms. Abat.

To remedy the wrongful termination, the plaintiff seeks relief available under Title VII and FEHA, including but not limited to compensatory damages, reinstatement, injunctive relief, attorney's fees, and any other appropriate relief as determined by the court.

### Fourth Cause of Action - Violation of Mandatory Reporting Protections

### Toward the Reporting Employee/Plaintiff:

The plaintiff asserts a fifth cause of action for the "Violation of Mandatory Reporting Protections" against the defendant, specifically in the context of the employee/plaintiff who reported adult abuse as a legal duty. The plaintiff contends that the defendant failed to fulfill its legal obligation to protect and support the reporting employee/plaintiff as required by applicable mandatory reporting laws and regulations.

In this cause of action, the plaintiff will demonstrate the following:

a) The defendant had a legal duty, under applicable federal, state, and local laws and regulations, to promptly and effectively report and address incidents of adult abuse, as reported by the employee/plaintiff who had a legal duty to report.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 16

b) The employee/plaintiff fulfilled their legal obligation by reporting an incident of adult abuse to the defendant as required by law.

c) Despite the employee/plaintiff's lawful reporting and the defendant's knowledge of the report, the defendant failed to provide the necessary support, protection, or intervention to the employee/plaintiff in accordance with mandatory reporting protections.

d) The defendant's failure to fulfill its duty to the employee/plaintiff not only violated the law but also exposed the employee/plaintiff to harm, retaliation, or other adverse consequences due to their reporting.

e) The employee/plaintiff suffered damages, including emotional distress, retaliation, and potential harm, as a direct result of the defendant's violation of mandatory reporting protections.

The plaintiff alleges that the defendant's failure to provide adequate protection and support to the employee/plaintiff who reported adult abuse as a legal duty constitutes a violation of the law and has caused significant harm to the employee/plaintiff.

Ms. Abat's termination following her diligent fulfillment of mandatory reporting duties represents a matter of paramount significance, as it can be unequivocally construed as a violation of the protections explicitly afforded to her under the law. The law, including the Fair Employment and Housing Act (FEHA), places great importance on the role of employees in reporting discriminatory or unlawful practices within the workplace. Ms. Abat's actions in reporting instances of harassment, patient mistreatment, and other concerns were not only commendable but also her legal obligation. The law not only encourages but mandates such reporting to ensure a safe and discrimination-free work environment for all. Therefore, her termination after fulfilling these essential reporting duties raises serious ethical questions and

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 17

carries the potential for legal consequences. It highlights the imperative need to uphold and respect the legal protections enshrined in FEHA and other relevant regulations, which are designed to shield employees from retaliation when they conscientiously fulfill their obligations to report wrongdoing in the workplace.

To address this violation of mandatory reporting protections in the context of the reporting employee/plaintiff, the plaintiff seeks remedies available under relevant laws and regulations, including but not limited to compensatory damages, injunctive relief, attorney's fees, and any other appropriate relief as determined by the court.

### Fifth Cause of Action - Hostile Work Environment:

The plaintiff asserts a fifth cause of action for a "Hostile Work Environment" against the defendant. The plaintiff contends that the defendant created and perpetuated a hostile work environment through acts of sexual harassment, retaliation, and other misconduct, which violated federal and state anti-discrimination laws, including Title VII of the Civil Rights Act of 1964 and the Fair Employment and Housing Act (FEHA).

In this cause of action, the plaintiff will demonstrate the following:

a) The plaintiff was subjected to unwelcome and offensive conduct, advances, comments, or actions based on their sex or gender, creating a hostile work environment.

b) The defendant's actions and behavior were severe or pervasive, making the work environment intolerable and detrimental to the plaintiff's employment conditions.

c) The plaintiff reported the harassment and retaliation to the defendant's management or appropriate authorities, or the harassment was so severe and pervasive that notice can be inferred.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 18

d) Despite the plaintiff's complaints or knowledge of the hostile work environment, the defendant failed to take prompt and effective remedial action to address and rectify the situation.

e) The plaintiff suffered damages, including emotional distress and loss of employment opportunities, as a result of the defendant's failure to address the hostile work environment.

The plaintiff alleges that the defendant's creation and perpetuation of a hostile work environment violated federal and state anti-discrimination laws, specifically Title VII and FEHA.

**Negligent Supervision of Ms. Hampton Resulting in Hosptile Work Environment:**

Based on Ponticas v. K.M.S. Investments 331 N.W.2d 907 (1983), Ms. Hampton's inaction in the face of Ms. Abat's reports constitutes negligent supervision and materially adverse action. Ms. Abat endured ongoing harassment from Justin and Amir, despite her reports. She also witnessed and reported incidents of severe patient mistreatment, but Ms. Hampton's response was lacking. Ms. Abat formally documented instances of sexual harassment and patient abuse, prompting an assurance from Mr. Olise that he had reported them to Ms. Hampton. Despite her formal complaints, there was a consistent lack of an appropriate response from Alameda Health System, leading Ms. Abat to escalate the matter to Risk Management. These issues underscore the concerns related to supervision, harassment, and patient safety within the organization.

To address the hostile work environment and the harm suffered by the plaintiff, the plaintiff seeks remedies available under these anti-discrimination laws, including but not limited to compensatory damages, injunctive relief, attorney's fees, and any other appropriate relief as determined by the court

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 19

**Sixth Cause of Action: Negligent Supervision of Upper Management**

**Resulted in Perpetuation of Hostile Work Environment**

The plaintiff asserts a sixth cause of action for "Negligent Supervision of Upper Management Resulting in Perpetuation of Hostile Work Environment" against the defendant. The plaintiff contends that the defendant's upper management failed in its duty to adequately supervise and address acts of harassment, retaliation, and other misconduct within the workplace, which led to the perpetuation of a hostile work environment.

In this cause of action, the plaintiff will demonstrate the following:

(1) The defendant, through its upper management, had a legal duty to provide effective supervision and oversight of workplace conduct, including addressing allegations of harassment, retaliation, and other misconduct.

(2) Upper management had knowledge or should have had knowledge of the hostile work environment created by lower-level employees and was aware of the plaintiff's complaints and reports.

(3) Despite having knowledge of the situation, upper management failed to take reasonable and appropriate steps to prevent or rectify the hostile work environment, thereby allowing it to persist and worsen.

(4) The plaintiff suffered damages, including emotional distress and loss of employment opportunities, as a result of upper management's negligent supervision and failure to address the hostile work environment.

The plaintiff alleges that the defendant's negligent supervision of upper management contributed to the perpetuation of the hostile work environment and violated the duty of care owed to the plaintiff.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 20

Considering the continued employment of Ms. Hampton despite a multitude of complaints, it is evident that Alameda Health System has failed in its duty to prevent harassment and discrimination, thereby violating the provisions of the Fair Employment and Housing Act (FEHA). Within the same year that Ms. Abat was terminated, a troubling pattern emerged, shedding light on Ms. Hampton's management style. A staggering 39 employees from various departments within Alameda Health System collectively submitted petitions calling for Ms. Hampton's removal from her position. These petitions meticulously detailed a litany of complaints, including allegations of harassment, antagonistic management practices, and unprofessional conduct directly attributed to Ms. Hampton's leadership.

Despite these numerous and well-documented grievances, Alameda Health System's upper management was made aware of these issues on two separate occasions. Regrettably, they failed to take any remedial actions to address the situation, effectively condoning Ms. Hampton's leadership approach. This inaction signifies an alarming institutional neglect and further reinforces the notion that Ms. Abat's adverse experiences may not be isolated incidents but rather symptomatic of a broader, deeply ingrained cultural problem within the organization—a culture that Alameda Health System has demonstrated a lack of commitment to rectify.

Furthermore, the absence of a meaningful response to the petitions implicates Alameda Health System in charges of negligent oversight and underscores their accountability for perpetuating a hostile work environment. Exhibit J serves as a tangible representation of the collective dissatisfaction with Ms. Hampton's leadership, bearing the signatures of 39 employees. The document, titled "Remove Jacqueline Hampton from Leadership," was addressed to Mr. Rodney Delaney, Director of Nursing at JGPH, and Theresa Cooper, VIP of Patient Care

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 21

Services. It substantiates the widespread discontent with Ms. Hampton's leadership and lends credibility to Ms. Abat's allegations of reprisal and defamation.

Given the substantial opposition to Ms. Hampton's leadership, documented within the same year as Ms. Abat's termination, it raises serious questions about the reasons cited for Ms. Abat's dismissal. These circumstances not only call the legitimacy of those reasons into doubt but also suggest the possibility of a retaliatory motive, particularly since these petitions directly challenge the actions of the individual responsible for Ms. Abat's termination. This information underscores the need for a thorough investigation into the circumstances surrounding Ms. Abat's termination and the broader workplace culture at Alameda Health System.

To address the negligent supervision of upper management and the harm suffered by the plaintiff, the plaintiff seeks remedies available under applicable laws, including but not limited to compensatory damages, injunctive relief, attorney's fees, and any other appropriate relief as determined by the court.

**Administrative Procedures Followed: Right to Sue Notice**

**Received from Civil Rights Department**

Plaintiff, Ms. Abat, hereby alleges:

That on November 12, 2023, Plaintiff filed a complaint with the Civil Rights Department (CRD) alleging violations of the Fair Employment and Housing Act (FEHA) by the Defendant, Alameda Health System. The CRD Matter Number assigned to this complaint was 202311-22629913.

On November 12, 2023, Plaintiff received a Notice of Case Closure and Right to Sue from the CRD (Exhibit K) addressed to Ms. Abat. This notice informed the Plaintiff that the

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 22

case with the CRD had been closed due to the request of an immediate Right to Sue notice by the Plaintiff.

The Right to Sue notice explicitly stated that a civil action under the provisions of the FEHA against the Defendant named in the complaint must be initiated within one year from the date of the Right to Sue notice, in accordance with Government Code section 12965, subdivision (b).

Pursuant to this notice, and within the prescribed one-year period, Plaintiff is bringing this action against the Defendant for the violations.

## VI. Prayer for Relief

WHEREFORE, Plaintiff, Ms. Nefretiri Abat, representing herself in this matter, respectfully requests the following relief:

1. Compensatory damages for emotional distress, humiliation, and loss of professional reputation in an amount to be proven at trial;

Back pay and lost benefits, as well as interest on these amounts, as provided by law;

2. All recoverable costs associated with the prosecution of this case, specifically:

    a. Filing fees incurred for initiating and maintaining this action;

    b. Service of process fees expended to serve the complaint and summons upon the Defendant;

    c. Reasonable costs for postage and copying associated with the preparation and dissemination of case materials;

    d. Expenses for any necessary legal research required to support Plaintiff's case;

    e. Expert witness fees, if expert testimony is necessary to support Plaintiff's claims;

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 23

f. Transcript costs for depositions and court proceedings, where such transcripts are necessary for the prosecution of this case;

g. Reasonable travel expenses related to the litigation, including transportation to and from court hearings, depositions, or other necessary events;

h. Any other miscellaneous expenses directly related to the prosecution of this case that are deemed recoverable under the law.

3. Punitive damages in an amount up to the statutory cap of $300,000 as provided by Title VII of the Civil Rights Act of 1991 for employers with more than 500 employees, in accordance with the criteria set forth in Kolstad v. American Dental Association, 527 U.S. 526 (1999);

4. Reinstatement to Plaintiff's former position or a comparable position without loss of seniority or benefits, or, if reinstatement is not feasible or desired, front pay in lieu thereof;

5. An order requiring Defendant to engage in training and policy reform regarding harassment, discrimination, and retaliation;

6. Any further relief that this Court deems just and equitable.

Plaintiff pledges to provide the Court with documentation substantiating the costs and expenses at the appropriate time per the Court's instructions.

Respectfully submitted,

Ms. Nefretiri Abat

Dated this 12th of November 2023

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 24

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 25

Nefretiri Abat

3355 Richmond Blvd

Oakland, CA 94611

(650) 440 0599

nefabat@gmail.com

November 12th, 2023

**The Superior Court of the State of California**

**The County of Alameda**

Hayward Hall of Justice

24405 Amador Street

Hayward, CA 94544

510-690-2700

RE: Case No. [Your Case Number]

 Exhibits (A through J)

COMPLAINT FOR:

(1) Sexual Harassment;

(2) Retaliation;

(3) Wrongful Termination;

(4) Hostile Work Environment

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 26

(5) Negligent Supervision

To the Court:

Please find attached the following Exhibits (A through J) to support the complaint for sexual harassment, hostile work environment, retaliation, wrongful termination and negligent supervision against AHS. These exhibits are being submitted in accordance with the court's rules and procedures.

**Exhibit A:** Screenshots and confrontation evidence of Justin's attempts to contact Ms. Abat, leading to concerns of sexual harassment.

**Exhibit B:** A screenshot from an Alameda Health System Zoom meeting on March 2nd, confirming the organization's awareness of the harassment complaint involving Ms. Abat and Justin.

**Exhibit C:** A screenshot from the same Zoom investigation meeting, capturing Ms. Abat confirming an incident captured on video footage regarding sexual harassment allegations with Amir.

**Exhibit D1-D2:** An email thread showcasing Ms. Abat's escalation of patient safety concerns and the managerial staff's inaction.

**Exhibit E:** An email from Ms. Abat to Weekend Supervisor on duty Michael Olise reporting the sexual harassment and two incidents of adult abuse in Unic C

**Exhibit F1-F3**: Email threads between Ms. Abat to Risk Manager Syreeta Corbitt, dated November 16th, expressing concerns and requesting a proper investigation and management of incidents.

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 27

**Exhibit G1-G2:** An email from Ms. Abat to the staffing office, detailing her severe health condition post-surgery and her inability to return to work; A facebook post by Ms. Abat of the near fatal surgery.

**Exhibit H:** A screenshot of a text message from Ms. Dahlia, praising Ms. Abat for her exceptional dedication and exemplary service.

**Exhibit I:** A termination letter given to Ms. Abat, highlighting inconsistencies with her documented job performance.

**Exhibit J:** A document titled "Remove Jacqueline Hampton from Leadership" with 39 employee signatures, substantiating discontent with Ms. Hampton's leadership and supporting Ms. Abat's allegations of reprisal and defamation.

**Exhibit K** Right to Sue from Civil Rights Department

In conclusion, these exhibits, from A to J, provide clear and compelling evidence to substantiate the serious allegations of sexual harassment, hostile work environment, retaliation, wrongful termination, and negligent supervision against AHS. We believe that this evidence not only demonstrates the validity of the claims but also highlights the organization's awareness of these issues. I look forward to presenting this crucial information in a court of law, and I trust that justice will be served. If you require any further documentation or information, please do not hesitate to contact me.

Sincerely,

Nefretiri Abat

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 28

## Verification

I, Nefretiri Abat, declare under penalty of perjury under the laws of the State of California that the following is true and correct:

1. I am the Plaintiff/Complainant in the above-entitled matter.

2. I have read the foregoing Complaint and the exhibits attached thereto, and I know the contents thereof. The statements made in the complaint and the exhibits are true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

3. I understand that this declaration is made under penalty of perjury.

4. I declare that I executed this verification on November 12th 2023, at Oakland, California.

Nefretiri Abat

Date: November 12th, 2023

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 29

COMPLAINT FOR:(1) SEXUAL HARASSMENT;(2) RETALIATION;(3) WRONGFUL TERMINATION;(4) HOSTILE WORK ENVIRONMENT;(5) NEGLIGENT SUPERVISION - 30